[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 97-6731
Non-Argument Calendar
_____

D. C. Docket No. CV-97-N-1579-NE

CARRIE HAWTHORNE,

Plaintiff-Appellant,

versus

MAC ADJUSTMENT, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(May 11, 1998)**

Before BLACK, HULL and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This lawsuit arises out of an alleged tortfeasor's attempt to obtain statutory damages

under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA"), against

a company with subrogation rights of the insurance carrier of the party damaged by the

alleged tortfeasor's actions. Based on a single letter sent by defendant-appellee Mac

Adjustment, Inc. ("Mac Adjustment"), plaintiff-appellant Carrie Hawthorne claims that Mac

Adjustment violated her rights that are protected by the FDCPA. Finding that Hawthorne's

obligation to Mac Adjustment did not meet the statutory definition of a "debt" under the FDCPA, the district court granted Mac Adjustment's motion for judgment on the pleadings. Hawthorne now appeals that decision and asks us to reverse the district court's order and remand the case for further proceedings. For the reasons stated below, we decline Hawthorne's invitation and AFFIRM the ruling of the district court.

I.

Hawthorne was involved in an accident, allegedly resulting from her negligence.[1] Liberty Mutual Insurance Company ("Liberty Mutual") insured the other party to the accident, who was damaged in the amount of $2,020.18. After paying its insured's claim, Liberty Mutual then provided Mac Adjustment with subrogation rights to the $2,020.18 it claimed Hawthorne owed.

On June 5, 1996, Mac Adjustment sent Hawthorne a letter requesting payment of the subrogation claim incurred by Liberty Mutual. In relevant part, the letter stated:

> Dear CARRIE HAWTHORNE:
>
> The above captioned subrogation claim resulting from your negligence has been referred to us to bring to a conclusion. If you had liability insurance to cover this accident, kindly note the name of your Insurance Company and policy number on the bottom of this letter and return it to us. If you did not have insurance and wish to resolve this matter voluntarily, send your check for the full amount of the claims by return mail.

---

[1]The record contains few facts; consequently, the Court's statement of the facts is similarly brief.

In the event that you are without insurance and you cannot remit payment immediately, please call our office AS SOON AS POSSIBLE to make arrangements to get this matter resolved.

Sincerely,


A.F. McGlone
Subrogation Dept.


Unless you, within 30 days after receipt of this notice, dispute the validity of this claim or any portion thereof, the claim will be assumed to be valid. If you notify us in writing within 30 days that the claim or any portion thereof is disputed, we will obtain verification of the claim or a copy of a judgment against you and a copy of verification or judgment will be mailed to you. Upon written request within 30 days, we will provide you with the name and address of the original creditor, if different from the current creditor. This is an attempt to collect a claim and any information obtained will be used for that purpose.

Averring that the claim referred to in the Mac Adjustment letter had expired under Alabama law on December 7, 1994, Hawthorne filed suit for damages in the Circuit Court of Madison County, Alabama, under the FDCPA. Mac Adjustment timely removed the case to federal court, and, shortly thereafter, filed a motion for judgment on the pleadings. Over Hawthorne's opposition, the district court entered judgment on the pleadings for Mac Adjustment. In its memorandum opinion granting judgment on the pleadings, the district court noted that the Eleventh Circuit had not yet addressed whether the FDCPA covers obligations such as those involved in this case. Based on other courts' analyses of similar claims, however, the district court concluded that the obligation at issue in this case did not constitute a "debt" under the FDCPA because it did not "arise out of any consumer

transaction in which the plaintiff was 'offered or extended the right to acquire "money, property, insurance, or services" which are "primarily for household purposes" and to defer payment.'" Consequently, the district court entered judgment on the pleadings for Mac Adjustment and dismissed the case with prejudice. This appeal followed.

## II.

We review a judgment on the pleadings de novo. See Slagle v. ITT Hartford, 102 F.3d 494, 497 (11th Cir. 1996) (citing Ortega v. Christian, 85 F.3d 1521, 1524-25 (11th Cir. 1996)). Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. See Bankers Insurance Co. v. Florida Residential Property and Casualty Joint Underwriting Ass'n, 137 F.3d 1293, ___, (11th Cir. 1998) (citing Hebert Abstract Co. v. Touchstone Properties, Ltd., 914 F.2d 74, 76 (5th Cir. 1990)); see also Rule 12(c), Fed. R. Civ. P. When we review a judgment on the pleadings, therefore, we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party. See Ortega, 85 F.3d at 1524 (citing Swerdoff v. Miami Nat'l Bank, 584 F.2d 54, 57 (5th Cir. 1978)). The complaint may not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Slagle, 102 F.3d at 497 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957) & citing Hartford Fire Ins. Co. v. California, 509 U.S. 764, 811 (1993)).

## III.

Review of the plain language of the FDCPA provisions at issue and the case law yields the  conclusion that the district court properly granted judgment on the pleadings for Mac Adjustment in this case.    Congress enacted the FDCPA in 1977 as an amendment to the Consumer Credit Protection Act "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors. . . ."  Consumer Credit Protect Act, S. Rep. No. 95-382, at 1-2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.  Indeed, the statute itself provides, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. §1692(e).

In analyzing the application of the FDCPA to the case at hand, we begin with the language of the statute itself.  See Brown v. Budget Rent-A-Car Systems, Inc., 119 F.3d 922, 924 (11th Cir. 1997) (citing Holly Farms Corp. v. NLRB, 517 U.S. 392, ___, 116 S. Ct. 1396, 1401 (1996)).  Specifically, Hawthorne alleges that Mac Adjustment violated 15 U.S.C. §1692e(10), which provides in its entirety:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Thus, section 1692e makes the existence of a "debt" a threshold requirement for the section's applicability. See Mabe v. G.C. Servs. Ltd. Partnership, 32 F.3d 86, 88 (4th Cir. 1994); Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir. 1987); Riebe v. Juergensmeyer and Assocs., 979 F. Supp. 1218, 1220 (N.D. Ill. 1997). The FDCPA defines "debt," in turn, as ". . . any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to a judgment." 15 U.S.C. §1692a(5). Although we recently held that a "debt" need not require the extension of credit, Brown v. Budget Rent-A-Car, 119 F.3d 922 (11th Cir. 1997), we have not previously addressed the limits of the FDCPA's definition of "debt."

By the plain terms of the statute, not all obligations to pay are considered "debts" subject to the FDCPA. See Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997). Rather, the FDCPA may be triggered only when an obligation to pay arises out of a specified "transaction." Although the statute does not define the term "transaction," we do not find it ambiguous. A fundamental canon of statutory construction directs us to interpret words according to their ordinary meaning. See Anderson v. Singletary, 111 F.3d 801, 804 (11th Cir. 1997) (citing Perrin v. United States, 444 U.S. 37, 42 (1979)). The ordinary meaning of "transaction" necessarily implies some type of business dealing between parties. See Webster's New Collegiate Dictionary 1230 (1979) (defining "transaction" as "a business deal"); Bass, 111 F.3d at 1325 (citing Webster's New World

–6–

Dictionary 1509 (2d ed. 1986)).  In other words, when we speak of "transactions," we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence.  See Bass, 111 F.3d at 1326 ("[T]he FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.").  While we do not hold that every consensual or business dealing constitutes a "transaction" triggering application of the FDCPA (such a holding would be contrary to the plain language of the statute limiting applicability to specified transactions, as well as to other portions of the statute not relevant to this analysis, which require the existence of other conditions before the FDCPA applies), at a minimum, a "transaction" under the FDCPA must involve some kind of business dealing or other consensual obligation.  Because Hawthorne's alleged obligation to pay Mac Adjustment for damages arising out of an accident does not arise out of any consensual or business dealing, plainly it does not constitute a "transaction" under the FDCPA.  Moreover, the fact that Mac Adjustment may have entered into a contract with the insurer for subrogation rights does not change the fact that no contract, business, or consensual arrangement between Hawthorne and the damaged party, its insurer, or Mac Adjustment exists.  Consequently, the FDCPA does not apply because this is not a transaction.

Moreover, the statutory language further limits application of the FDCPA to debts arising from consumer transactions.  See 15 U.S.C. §1592a; Shorts v. Palmer, 155 F.R.D. 172, 174 (S.D. Ohio 1994); Battye v. Child Support Servs., Inc., 873 F. Supp. 103, 105 (N.D. Ill. 1994).  Indeed, as noted above, the statute provides that a "debt" is ". . . any obligation

or alleged obligation <u>of a consumer</u> to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to a judgment." 15 U.S.C. §1692a(5) (emphasis added). Quite simply, Hawthorne's alleged obligation to Mac Adjustment does not arise out of a consumer transaction; it arises from a tort. In conducting herself in an allegedly negligent manner that precipitated an accident, Hawthorne engaged in no consumer transaction. She neither purchased nor used goods or services. Rather, Hawthorne finds herself indebted to Mac Adjustment because she allegedly failed to conduct herself with the reasonable care that society demands of all of us, and she cannot somehow transform this payment obligation arising out of an accident into a consumer transaction. Thus, we hold that the district court properly granted judgment on the pleadings for Mac Adjustment.[2]

---

[2]Although unnecessary to our holding, we note in passing that the legislative history and the Federal Trade Commission's ("FTC") staff commentary on the FDCPA confirm our reading of the statute. First, considering the legislative history, the Senate Report on the Fair Debt Collection Practices Act expressly defines the scope of the Act as applying "only to debts **contracted** by **consumers** for personal, family, or household purposes; it has no application to the collection of commercial accounts." Consumer Credit Protect Act, S. Rep. No. 95-382 (1977), <u>reprinted</u> <u>in</u> 1977 U.S.C.C.A.N. 1695 (emphasis added). Hawthorne's obligation to Mac Adjustment, which arose purely out of an accident, involved no contract of any type between Hawthorne and the damaged party, the insurer, or Mac Adjustment. Likewise, it involved no consumer transaction. Accordingly, it does not constitute the type of obligation that Congress envisioned protecting through the FDCPA.

Similarly, the FTC's staff commentary on the FDCPA supports our understanding of the statute. Congress specifically charged the FTC with enforcement and administration of the FDCPA. <u>See</u> 15 U.S.C. §1692l. Although the FTC's construction of the FDCPA is not binding on the courts, because the FTC is entrusted with administering the FDCPA, its interpretation should be accorded considerable weight. <u>See</u> <u>Chevron, U.S.A. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 844 (1984). In a notice entitled "Statements of General Policy or

Review of other cases concerning the FDCPA confirms our interpretation of the statutory definition of "debt" to exclude tort obligations such as the one at issue in this case. In Zimmerman v. HBO Affiliate Group, 834 F.2d 1163 (3d Cir. 1987), and Shorts v. Palmer, 155 F.R.D. 172 (S.D. Ohio 1994), for example, the courts concluded that obligations to pay money arising out of the alleged theft of property or services did not constitute "debts" under the FDCPA.[3] Obviously, theft is neither consensual nor contractual; nor does it constitute a business dealing. Consequently, it fails to meet the definition of a "transaction" under the FDCPA. See also Mabe v. G.C. Servs. Ltd. Partnership, 32 F.3d 86 (4th Cir. 1994) (an obligation to pay child support arising out of an administrative support order issued by Virginia's Department of Social Services does not qualify as a "debt" under the FDCPA). On the other hand, several courts have concluded that bounced checks may well involve "debts" protected under the FDCPA. See, e.g., Bass, 111 F.3d 1322 (7th Cir. 1997); Ernst v. Jesse L. Riddle, P.C., 964 F. Supp. 213 (M.D. La. 1997); Narwick v. Wexler, 901 F. Supp.

---

Interpretation, Staff Commentary on the Fair Debt Collection Practices Act," 53 Fed. Reg. 50,097 (1988), the FTC considered the meaning of the term "debt" under the FDCPA. See id. at 50,102. In providing examples of obligations that the FTC considered "exclu[ded]" from the definition of a "debt" under the FDCPA, the FTC stated, "The term does not include: . . . tort claims, because they are not debts incurred from a 'trans[action] (involving purchase of) property . . . or services . . . for personal, family or household purposes." Id. (The commentary refers to a "transportation." Because the statute the commentary quotes refers to a "transaction," we assume that this is a typographical error.) Thus, the FTC contemplated precisely the type of obligation at issue in this case and expressly found it not to trigger the FDCPA.

[3]The Third Circuit appears to have concluded that the alleged theft did not constitute the type of obligation necessary to trigger the FDCPA at least in part because it did not result from the extension of credit. Zimmerman, 834 F.2d at 1168. Although, as we have previously held, we disagree with Zimmerman in this respect, see Brown v. Budget Rent-A-Car, 119 F.3d at 924 n.1, Zimmerman may fairly be read to stand for the proposition that a theft does not constitute a "transaction" as required by the statute.

1275 (N.D. Ill. 1995); In re Scrimpsher, 17 B.R. 999 (Bankr. N.D.N.Y. 1982). Unlike torts, however, bounced checks represent legal obligations to pay. In other words, they constitute evidence of a business dealing, or a "transaction" under the FDCPA.

We also reject Hawthorne's attempt to persuade the Court that our recent decision in Brown requires us to conclude that the obligation at issue in this case is covered by the FDCPA. Brown rented a truck from Budget Rent-A-Car. In doing so, he signed an agreement and paid Budget cash in an amount that included loss damage waiver protection. Upon leaving Budget, Brown collided the rented vehicle with an underpass and damaged the truck. Budget subsequently demanded damages. Brown's insurance carrier paid for the damage to the truck, but refused to pay the deductible or loss-of-use fee. Brown also refused to pay these amounts because he believed them to be covered by the loss damage waiver protection. Budget retained the services of an agency to initiate collection activities against Brown, and Brown sued for violations of the FDCPA. Budget claimed that the FDCPA did not apply because Brown had not paid on credit, but rather had used cash. We held that the FDCPA does not require the extension of credit to be applicable to an obligation. We did not consider the question of whether the obligation at issue in Brown involved a "transaction" under the FDCPA. It is clear, however, that the facts delineated in Brown do not exclude the possibility that the obligation in that case constituted a "debt" under the FDCPA, as Brown's obligations arose at least in part out of a business transaction where Brown contracted for what appear to be personal services (the truck rental and the loss damage waiver protection).

In the case at hand, no such transaction occurred. Consequently, <u>Brown</u> does not demand the result that Hawthorne seeks.

Finally, Hawthorne attempts to avoid our conclusion by contending that Mac Adjustment waived "any claim to be exempted from the FDCPA." Appellant's Brief at 5. Specifically, she claims that Mac Adjustment "voluntarily inclu[ded] . . . FDCPA language in its dunning letter" and thus waived its ability to contend now that the FDCPA does not apply. <u>Id.</u> at 6. In support of her argument, Hawthorne relies upon <u>Vasquez v. Allstate Insurance Co.</u>, 937 F. Supp. 773 (N.D. Ill. 1996).

Several problems with Hawthorne's argument exist. First, we note that the letter sent by Mac Adjustment does not refer to the FDCPA at all. Second, federal jurisdiction in this case is predicated on the alleged existence of a federal question under the FDCPA. We have held, however, that the FDCPA does not apply in this case. Thus, to the extent that Mac Adjustment chooses to govern itself according to certain principles of the FDCPA without referring to them expressly in its dunning letters, it is well established that the parties cannot confer federal jurisdiction by "waiving" into applicability of the FDCPA. <u>See</u> <u>Eagerton v. Valuations, Inc.</u>, 698 F.2d 1115, 1118 (11th Cir. 1983). Rather, federal jurisdiction may be created only by congressional grant. <u>See</u> <u>Weinberger v. Bentex Pharmaceuticals</u>, 412 U.S. 645, 652 (1973). Finally, we need not quarrel with <u>Vasquez</u> on this point because it does not even mention the term "waiver," let alone address the concept. Indeed, the court in <u>Vasquez</u> concluded, "This opinion should . . . not be viewed as an expression of any view as to [the

defendant's] possible liability under the Act."  937 F. Supp. at 775 n.1.  In short, <u>Vasquez</u> is inapplicable to this case.

IV.

We therefore conclude that the district court properly granted judgment on the pleadings for Mac Adjustment.  The tort obligation at issue in this case does not constitute a "debt" under the plain language of the FDCPA or any of the applicable case law.  Accordingly, the judgment of the district court must be, and is, AFFIRMED.