**AGRICREDIT ACCEPTANCE, LLC, Plaintiff,**

v.

**Thomas Gary HENDRIX, Hohenberg Bros. Co., Loeb & Company, Inc., Weil Brothers–Cotton, Inc., The Montgomery Company, Inc., Collins Bonded Warehouse, Inc., Candler Gin & Warehouse, Inc., Goldkist, Inc. d/b/a Goldkist Cotton Warehouse, Growers Gin and Warehouse, Inc., Savannah River Cotton Co., Inc., and Cottage Hill Trading Co., Inc., Defendants.**

No. CV 698–073.

United States District Court, S.D. Georgia, Statesboro Division.

Dec. 21, 1998.

Grant T. Stein, Alston & Bird, Atlanta, GA, for Agricredit Acceptance, LLC, plaintiff.

Patrick T. O'Connor, Oliver, Maner & Gray, Savannah, GA, for Thomas Gary Hendrix, defendant.

John M. Tatum, Hunter, Maclean, Exley & Dunn, Savannah, GA, for Hohenberg Bros. Co., Loeb & Co., Inc., Weil Brothers–Cotton, Inc. and Montgomery Co., Inc. defendants.

L. Dean Best, Fulcher, Hagler, Reed, Hanks & Harper, LLP, Augusta, GA, for Collins Bonded Warehouse, Inc., defendant.

## *MEMORANDUM AND ORDER*

NANGLE, District Judge.

Before the Court is defendants Hohenberg Bros. Co., Loeb & Co., Inc., Weil Brothers–Cotton, Inc., and The Montgomery Co., Inc.'s ("Cotton Merchants") motion to dismiss or for judgment on the pleadings. For the reasons that follow, defendants' motion is denied.

## I. *BACKGROUND*

The above-captioned case is one of many to arise from the exploits of Sea Island Cotton Trading Co. in Statesboro, Georgia. Sea Island, a cotton brokerage company, sold cotton on behalf of many Statesboro-area cotton farmers. In the middle of its last transactions, however, Sea Island declared bankruptcy leaving the farmers and their creditors without the crops or any proceeds from the crops and leaving the merchants without the cotton they had purchased. Steve Visser, *Ending Raw Cotton Deals: Farmers Hurt by a Muddy '97 and a Bankrupt Broker Already are Behind in Getting This Year's Top Crop in the Ground*, ATLANTA J. & CONST., May 16, 1998, at D1; *Handshake Deals on Cotton on Shaky Ground in Georgia*, FLORIDA TIMES-UNION (Jacksonville), Mar. 24, 1998, at B1. This case is the story of the effect of Sea Island's bankruptcy on one farmer and his cotton crop.

Defendant Hendrix, a cotton farmer and a victim of Sea Island's bankruptcy, received a loan in the form of a promissory note from plaintiff Agricredit Acceptance, LLC ("AAC") on January 6, 1997, as modified on May 30, 1997, in the principal amount of $1,667,000 (the "Hendrix Loan"). The Hendrix Loan was used by Hendrix in his farming operation to finance the growing of cotton in Bulloch and Evans Counties, Georgia. Pl.'s Compl. at ¶ 16 (Doc. 1). On March 25, 1998, the amount of the Hendrix Loan was $1,835,631.32, plus interest, fees, costs and charges. *Id.* at ¶ 17. The Hendrix Loan was secured by collateral set forth in an Agricultural Security Agreement dated January 6, 1997, from Mr. Hendrix to AAC, as modified. *Id.* at ¶ 18. The Security Agreement granted AAC a security interest in, among other things, all of Mr. Hendrix's:

> ... farm products ... now growing or hereafter grown and whether harvested or unharvested (including, but not limited to, ... cotton ...), all products of such crops in their unmanufactured states ... and the proceeds (including, but not limited to insurance proceeds) and products for the foregoing.

*Id.*, Exh. C. An attachment to the Security Agreement identifies Sea Island Cotton Co.

as the "Buyers, Commission Merchants or Selling Agents to or through whom Debtor will sell Debtor's farm products collateral." *Id.*

AAC's security interest was perfected by recording in the real estate records and with the Clerk's office in the applicable counties in Georgia. *Id.* at ¶ 20 & Exh. D. AAC notified Sea Island Cotton Trading Co. of its security interest in writing in accordance with the provisions of the Food Security Act ("FSA"), 7 U.S.C. § 1631, on May 30, 1997. *Id.* at ¶ 21 & Exh. E. Said notice was received by Sea Island on June 4, 1997, according to the certified mail return receipt. *Id.* Plaintiff alleges that Sea Island and any subsequent buyers are subject to its security interest pursuant to the priority rules of the Georgia Uniform Commercial Code because it followed the requirements of the FSA. *Id.* at ¶ 25.

Plaintiff alleges that Hendrix produced in excess of 4000 bales of cotton which are subject to the security interest. *Id.* at ¶ 26. The cotton was being stored in warehouses owned and operated by some of the defendants and by Bulloch Gin, which is not a party to this case. *Id.* at ¶ 27. Plaintiff alleges that it did not consent to the storage of the cotton in the warehouses and that Section 5(j) of the Security Agreement states that "Debtor will not store any Collateral in warehouse facilities or otherwise without prior written consent of Secured Party ...." *Id.* at ¶ 28 & Exh. C. The warehouses issued electronic warehouse receipts for the cotton which were eventually placed in the name of Sea Island. Def. Merchants' Answer at 2 (Doc. 28). Sea Island then purported to sell some of the cotton to the cotton merchants. Pl.'s Compl. at ¶ 29 (Doc. 1). Apparently, at that time, Sea Island transferred the warehouse receipts into the merchants' names. Def. Merchants' Answer at 3. (Doc. 28). The notice provided to Sea Island of plaintiffs security interest included a payment obligation requiring Sea Island to make joint payments to Hendrix and plaintiff in the full amount of the sales proceeds. Pl.'s Compl. at ¶ 31 & Exh. E (Doc. 1). However, plaintiff contends said obligation has not been met. *Id.* at ¶ 31. Finally, plaintiff alleges

that it has never consented to the sale or transfer of the cotton, and that the cotton remains subject to plaintiff's security interest. *Id.* at ¶ 33.

Consequently, plaintiff seeks judgment on the Hendrix Note, *id.* at 9–10, foreclosure of its security interest and a writ of possession against anyone in possession of the cotton, *id.* at 10, a finding of conversion and an award of damages against the cotton merchants, *id.* at 11, an injunction against defendants directing them to honor plaintiff's security interest in the Hendrix cotton, *id.* at 11–12, and the appointment of a receiver to protect and sell the Hendrix cotton and to deposit the proceeds of such sale with the Court pending final determination of the case by the Court, *id.* at 12–13. Defendants Hohenberg Bros. Co., Loeb & Co., Inc., Weil Bros.–Cotton, Inc., and the Montgomery Co., Inc. have moved to dismiss plaintiff's complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Alternatively, defendants have moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Def. Merchants' Mot. Dismiss at 1 (Doc. 29).

## II. *ANALYSIS*

When ruling on a Rule 12(b)(6) motion to dismiss or on a Rule 12(c) motion for judgment on the pleadings,[1] a court must examine the complaint in the light most favorable to the non-moving party, accept the well-pleaded factual allegations as true, and construe all allegations in favor of the plaintiff. *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998); *Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir.1997); *Harris v. Menendez*, 817 F.2d 737, 739 (11th Cir.1987). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Hawthorne*, 140 F.3d at 1370; *Lopez*, 129 F.3d at 1189; *In re Johannessen*, 76 F.3d 347, 349 (11th Cir. 1996).

### A. *Satisfaction of the requirements of the Food Security Act ("FSA")*

The FSA provides that in the ordinary course of business, buyers or commission merchants[2] of farm products will not be subject to a security interest created by the seller in those products. 7 U.S.C. § 1631(d) & (g)(1). This general rule is subject to an exception:

if within one year before the sale of the farm products, the buyer or commission merchant has received from the secured party or the seller written notice of the security interest organized according to farm products that—

(i) is an original or reproduced copy thereof;

(ii) contain

(I) the name and address of the secured party;

(II) the name and address of the person indebted to the secured party;

(III) the social security number of the debtor or, in the case of a debtor doing business other than as an individual, the Internal Revenue Service taxpayer identification number of such debtor;

(IV) a description of the farm products subject to the security interest created by the debtor, including the amount of such products where applicable, crop year, county or parish, and a reasonable description of the property; and

---

1. The Eleventh Circuit appears to treat Rule 12(b)(6) and Rule 12(c) motions identically. Indeed, both Rules have the same standard in this Circuit. *Compare Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir.1998) (articulating Rule 12(c) standard and quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) *with Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir.1997) (articulating Rule 12(b)(6) standard and quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

2. AAC asserts that Sea Island is a commission merchant for the purposes of the FSA. Pl.'s Compl. at ¶¶ 22–25 (Doc. 1). The defendant merchants dispute this contention, but they admit that if AAC complied with either 7 U.S.C. § 1631(e) or (g)(2), then Sea Island was subject to AAC's security interest. Defs.' Mem. Supp. Mot. Dismiss at 2–3 (Doc. 30).

(iii) must be amended in writing, within 3 months, similarly signed and transmitted, to reflect material changes;

(iv) will lapse on either the expiration period of the statement or the transmission of a notice signed by the secured party that the statement has lapsed, whichever occurs first; and

(v) [contains] any payment obligations imposed on the buyer [or commission merchant] by the secured party as conditions for waiver or release of the security interest; and

(B) the buyer has failed to perform the payment obligations....

then the buyer or commission merchant takes subject to the security interest. 7 U.S.C. § 1631(e)(1) & (g)(2)(A)–(B).

■ AAC asserts in its complaint that it complied with this exception to the FSA, Pl.'s Compl. at ¶¶ 21 & 25 (Doc. 1), and attaches a copy of the notice sent to Sea Island which appears on its face to comply with the FSA, *id.* at Exh. E (Doc. 1). (App.1). The notice is a form which closely tracks the language of §§ 1631(e)(1)(A) and (g)(2)(A). (App.1). In satisfaction of §§ 1631(e)(1)(B) and (g)(2)(B), AAC alleges that Sea Island, the buyer, did not fulfill the payment obligations contained in the notice. Pl.'s Compl. at ¶ 31 (Doc. 1). Accepting the well-pleaded factual allegations as true and construing all allegations in the light most favorable to AAC, the Court finds that these facts, if proven, will support plaintiff's claim that it complied with the FSA. Consequently, under the rationale of *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99, defendants' motion to dismiss or for judgment on the pleadings cannot be granted on the ground that plaintiff did not comply with the requirements of the FSA.

### B. *Preemption of the U.C.C. by the United States Warehouse Act*

The merchants' main argument in favor of dismissal is that the United States Warehouse Act ("USWA"), 7 U.S.C. § 259, provides the only method for determining possessory rights in cotton and that it preempts other federal or state law on the subject of priority of security interests in the cotton.

Defs.' Mem. Supp. Mot. Dismiss at 3–9 (Doc. 30). The Act provides in pertinent part:

(2) Notwithstanding any other provision of Federal or State law:

(A) *The record of the possessory interest of persons in cotton included in any such central filing system* shall be deemed to be a receipt for the purposes of this chapter or State law and *shall establish the possessory interest of persons in the cotton.*

(B) Any person designated as a holder of an electronic warehouse receipt authorized under this subsection and subsection (d) of this section shall, for the purpose of perfecting the security interest of the person under Federal or State law with respect to the cotton covered by the warehouse receipt, be considered to be in possession of the warehouse receipt. *If more than one security interest exist in the cotton reflected on the electronic warehouse receipt, the priority of the security interests shall be determined by the applicable Federal or State law.* This subsection is applicable to electronic warehouse receipts and any other security interests covering cotton stored in a cotton warehouse, regardless of whether the warehouse is licensed under this chapter.

7 U.S.C. § 259(C)(2) (emphasis added). In particular, the merchants argue that the USWA provides that any interests in cotton not reflected in the electronic warehouse receipt system are subordinate to interests so reflected. Defs.' Reply Pl.'s Resp. Merchants' Mot. Dismiss at 3 (Doc. 39).

*Louisiana Public Service Commission v. Federal Communications Commission,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), sets forth six alternative grounds for a finding of preemption.

Pre-emption occurs [1] when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, [2] when there is outright or actual conflict between federal and state law, [3] where compliance with both federal and state law is in effect physically impossible, [4] where there is implicit in federal law a barrier to state regulation, [5] where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no

room for the States to supplement federal law, or [6] where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Id.* at 368–69, 106 S.Ct. 1890. In the present case, two of these grounds for preemption are alleged: a clear intent to preempt on the part of Congress and a conflict between the Georgia U.C.C. provisions and the USWA. Merchants' Reply [AAC's] Resp. Merchants' Mot. Dismiss at 2 (Doc. 39).

### 1. *Clear intent to preempt.*

■ "The critical question in any preemption analysis is always whether Congress intended that federal regulation supersede state law." *Louisiana Public Service Com'n,* 476 U.S. at 369, 106 S.Ct. 1890. When statutory language is clear and unambiguous, the language controls "absent a legislative intent to the contrary." *United States v. Chandler,* 996 F.2d 1073, 1084 (11th Cir.1993). Only when the statutory language is unclear do we resort to legislative history. *United States v. Rojas–Contreras,* 474 U.S. 231, 235, 106 S.Ct. 555, 88 L.Ed.2d 537 (1985); *see United States v. Castro,* 829 F.2d 1038, 1049 (11th Cir.1987) ("Our objective when interpreting a statute is to determine the drafters' intent."), *modified on other grounds,* 837 F.2d 441 (11th Cir.1988). "In determining the meaning of the statute we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990). Accordingly, courts cannot pronounce a statutory interpretation that would thwart the legislative purpose of a particular statute. *In re Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct.

2053, 56 L.Ed.2d 591 (1978). "A change of [statutory] language is some evidence of a change of purpose...." *Johnson v. United States,* 225 U.S. 405, 415, 32 S.Ct. 748, 56 L.Ed. 1142 (1912); *accord McElroy v. United States,* 455 U.S. 642, 650–52 n. 14, 102 S.Ct. 1332, 71 L.Ed.2d 522 (1982).

■ The language of the present version of the USWA is less than crystal clear. Thus, a review of the legislative history is necessary. Congress amended the USWA in 1992, adding the present language, to provide for the universal use of electronic cotton warehouse receipts. Its first attempt to do so, H.R.5764, generated some legislative history but was not passed. A different version, H.R.6128, was passed with little legislative history at all. What legislative history exists supports the idea that the amendment was not intended to preempt state law on the issue of priority of security interests.

The 1990 version of the Act, which only applied to federally-licensed warehouses, P.L. 101–624, Title V, § 508(a), 104 Stat. 3441 (1990), provided in subsection (2)(B) that the Secretary of Agriculture could promulgate regulations making liens registered electronically in the central filing system the only liens enforceable against owners and purchasers of the cotton.[3] This language was retained but limited to federal warehouses in H.R.5764, which expanded the provisions for the use of electronic receipts to include state warehouses as well.[4] This bill was not passed, and the language was struck from the statute by H.R.6128, the bill that was eventually adopted. In its place was put the language at issue in this case concerning

---

3. The statute read as follows:

 (c)(2) Notwithstanding any other provision of law—

 . . .

 (B) *the Secretary may provide* for the recording of liens in the central filing system that shall represent the perfected security interest of persons whose liens are so recorded and *for liens that are so recorded to be the only liens that are enforceable against owners and purchasers of cotton registered in the central filing system,* except that nothing in this paragraph shall be construed to alter the enforceability of the warehouseman's lien.

P.L. 101–624, Title V, § 508(a), 104 Stat. 3441 (1990) (emphasis added).

4. The bill would have struck the phrase "The Secretary may" in subsection (2)(B) and interested "with respect to cotton stored in a warehouse licensed under this Act, the Secretary may." H.R.Rep. No. 102–832, 1992 WL 221491, at *1 (August 10, 1992). The statute was intended "to clarify that all cotton warehouses, whether Federally or State licensed, may record in a central filing system...." *Id.*

the priority of security interests.[5] This alone seems to imply that Congress did not intend to require that all liens on cotton be filed in the central filing system or be forever lost. On the contrary, it seems that Congress was backing away from that position by removing the power to promulgate such rules from the Secretary of Agriculture. *See Johnson v. United States,* 225 U.S. 405, 415, 32 S.Ct. 748, 56 L.Ed. 1142 ("A change of [statutory] language is some evidence of a change of purpose...."); *accord McElroy v. United States,* 455 U.S. 642, 650–52 n. 14, 102 S.Ct. 1332, 71 L.Ed.2d 522 (1982).

Additionally, the congressional reports seem to support this analysis. The only report for H.R.6128, H.R.REP. No. 102–1098, states that the purpose of the amendment was twofold—to clarify that all cotton warehouses whether federally or state licensed could use the central filing system and that electronic warehouse receipts for cotton are to be treated identically to paper receipts "with respect to the perfection of a security interest under State law." H.R.REP. No. 102–1098, 1992 WL 396421, at *30 (Dec. 31, 1992).[6] The report for H.R.5764, H.R.REP. No. 102–832, states that the purpose of that amendment was also to clarify that all cotton warehouses whether federally or state licensed could use the central filing system and that electronic receipts be treated identically to paper receipts "with respect to the perfection of a security interest under State law." H.R.REP. No. 102–832, 1992 WL 221491, at *1–*2 (1992). That is, the Bill would require states "to treat an electronic cotton warehouse receipt ... the same way the State treats a paper receipt with respect to how a security interest is perfected under State law." *Id.* at *3. Finally, H.R.CONF.REP. No. 101–916, 1990 U.S.C.C.A.N. 5286, 1990 WL 211565, at *741, the Report for the 1990 version, states that the statute "provides that electronic or central filing systems can be

used as a method of proving ownership of cotton." *Id.*

Notably absent are any comments stating what the merchants argue, namely that the only way to perfect a security interest in cotton is to file the lien in the central filing system. The closest language to this is the language authorizing the Secretary of Agriculture to promulgate regulations to that effect. This language was only present in the 1990 version and in H.R.5764, and even there the Secretary's power to so provide was limited to federally funded warehouses. H.R.REP. No. 102–832, 1992 WL 221491, at *4. Additionally, the Report for the 1990 version implies that unless the Secretary exercises his power, the electronic filing systems will be *a* method of proving ownership but not *the only* method. H.R.CONF.REP. No. 101–916, 1990 WL 211565, at *741.

Consequently, the language of the statute, its various amendments, and the legislative history support the idea that Congress did not intend to preempt state law on the issue of priority of liens. On the contrary, Congress originally gave the Secretary of Agriculture the power to dictate the priority of liens on cotton, but once the state warehouses were added to the statute, all language to that effect was deleted from the Act. Accordingly, the Court finds that Congress did not intend to preempt state law on this issue.

### 2. *Conflicts between the Georgia U.C.C. and the USWA*

■ The only conflict asserted by the merchants is a conflict between the merchants' interpretation of the USWA and the application of state rules of priority of secured interests. That is, the merchants contend that since the USWA's electronic receipt system is the exclusive mechanism for establishing possessory rights to the cotton, any application of state priority rules that would establish a superior possessory right

---

**5.** The bill struck paragraph (c)(2)(B) entirely from the 1990 Act and added the present paragraph (c)(2)(B). P.L. 102–553, 106 Stat. 4140 (1992).

**6.** This Report also stated that H.R.6128 and H.R. 5764 "contained essentially the same provisions." H.R.REP. No. 102–1098, 1992 WL

396421, at *30 (Dec. 31, 1992). While this may have been true in general, with respect to the issue of priority of security interests in the cotton, that statement is not true. The language was significantly changed for the purposes of this case.

in a secured party not represented in the electronic system is a direct conflict between the USWA and state law. Merchants' Reply [AAC's] Resp. Merchants' Mot. Dismiss at 3–4 (Doc. 39). Defendants' argument is not persuasive. As discussed *supra*, the USWA does not establish exclusive possessory rights in persons holding an electronic warehouse receipt. Rather, the USWA merely clarified that electronic warehouse receipts for cotton are to be treated identically to paper receipts "with respect to the perfection of a security interest under State law." H.R.REP. No. 102–1098, 1992 WL 396421, at *30 (Dec. 31, 1992). Congress did not intend to give electronic receipts the super-priority suggested by the merchants. On the contrary, Congress intended for the electronic receipts to be on parity with paper receipts and to be prioritized according to state law. Consequently, there is no conflict between the USWA and state law.

Both of the asserted grounds for preemption fail. Congress did not clearly intend for the USWA to preempt state law, and there is no conflict between the USWA and state law. Accordingly, application of the U.C.C. is necessary to determine the priority of the interests asserted in this case.

### C. *Application of the U.C.C.*

 The crux of the U.C.C. arguments are whether AAC delivered or entrusted the cotton to Hendrix or to Sea Island or otherwise acquiesced in the procurement by Hendrix or Sea Island of any document of title,

O.C.G.A. § 11–7–503(1), and whether the merchants duly negotiated the warehouse receipts, O.C.G.A. § 11–7–501. Section 11–7–502 provides that a holder to whom a negotiable warehouse receipt has been duly negotiated acquires title to the goods and the direct obligation of the warehouse to deliver them except as provided in O.C.G.A. § 11–7–503. Consequently, before the Court can decide if AAC delivered or entrusted or acquiesced in the procurement of any document of title for the cotton pursuant to § 11–7–503, the Court must decide if the merchants duly negotiated the warehouse receipts pursuant to § 11–7–501. There is insufficient evidence in the record for the Court to decide this preliminary question of due negotiability. Consequently, the merchants' motion to dismiss or for judgment on the pleadings will be denied without prejudice on these issues.

### III. *CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss or for judgment on the pleadings will be denied. Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss or for judgment on the pleadings is denied. The preemption claims are denied with prejudice, and the U.C.C. claims are denied without prejudice.

**IT IS FURTHER ORDERED** that the stay Order entered by this Court on November 23, 1998 (Doc. 67) is hereby lifted. The Clerk is directed to adjust all deadlines accordingly.

APPENDIX 1
### NOTICE OF SECURITY INTEREST

SEA – ISLAND COTTON
2023 S. ZETLEROWER AVENUE
STATESBORO, GA 30458

This Notice of Security Interest ("Notice") is given pursuant to § 1324 of the Federal Food Security Act of 1985 (Public Law 99–198) and Uniform Commerical Code (§ 9–307 (as amended and enacted in your state), which federal law and state law are collectively referred to herein as the "Applicable Laws".

Notice is hereby given that Agricredit Acceptance Company (referred to herein as the "Secured Party") has a security interest or security interests in the farm products (as that term is defined in the Applicable Laws and as further described below) of the following described Debtor or Debtors. The following information is provided pursuant to the Applicable Laws:

1. Name and address of Secured Party:
 Agricredit Acceptance Company
 PO Box 9263
 Des Moines, IA 50306
 Phone: 1–800–903–4347

2. Name and address of person indebted to Secured Party (referred to herein as the "Debtor" or "Debtors") and the Social Security Number, or the Internal Revenue Service taxpayer identification number (in the case of Debtor or Debtors doing business other than as an individual), of the Debtor, or Debtors:

| Name of Debtor(s) | Address | Social Security # or IRS Taxpayer ID# |
|---|---|---|
| Thomas G. Hendrix | 1566 Maria Sorrel Road, Statesboro, GA 30458 | 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 |

3. The following is a description of the farm products subject to the security interest or security interests created by the Debtors, organized according to farm products, including amount of farm products (where applicable), crop year and county:

| Description of Farm Products(s) | Amount(s) | Crop Years | County(ies) |
|---|---|---|---|
| Cotton | All | 1997 | Bulloch & Evans |

Attached as exhibit is a reasonable description of the property. See Attachment(s) hereto which are incorporated herein by reference.

4. This Notice will be amended in writing to reflect material changes within three months from the time of any material change. Any such amendment will be similarly signed and transmitted. This Notice will lapse either on the expiration of this Notice (one year from the date of mailing) or upon the transmission of a Notice signed by the Secured Party that the statement has lapsed, whichever first occurs.

5. *The payment obligation imposed upon you, as buyer, commission merchant or selling agent to or through whom the farm products are sold which is a condition for waiver or release by the Secured Party of the security interest of the Secured Party in the farm products described above is as follows: issuance of a check in the full amount of the sales proceeds of the farm products jointly in the names of: (1) the Secured Party set forth above, as one party, and (2) the Debtor or Debtors set forth above as the other party. You are not authorized to deduct from such sales proceeds costs incurred to market or transport the farm products.*

6. This Notice is mailed by registered mail this 30 day of May, 1997.

 Secured Party: Agricredit Acceptance Company

 by: _____
 Krystof J. Grochala
 4412 114th Street, PO Box 7902, Des Moines, IA 50322–9204
 Phone 1–800–903–4347

Attachments to the Notice of Security Interest for the following named Debtor(s):
 Thomas G. Hendrix

Reasonable description of property is as follows:
 Please see attached Exhibit A.

A description of the real estate where any crops are growing or to be grown is set forth in this exhibit as listed below:

| FSN | GMD | County | Fee Owner |
|---|---|---|---|
| 604 | 1738 | Evans | Thomas G. Hendrix |
| 4750 | 44 | Bulloch | Thomas G. Hendrix |
| 4724 | 1575 | Bulloch | Thomas G. Hendrix |
| 4724 | 1575 | Bulloch | Eddie Rushing |
| 4724 | 48 | Bulloch | C.B. Altman |
| 4724 | 48 | Bulloch | Owen Zetterower |
| 4724 | 48 | Bulloch | Rufus Futch |
| 4724 | 48 | Bulloch | Mattie B. Hendrix |
| 4724 | 48 | Bulloch | Gregg Hendrix |
| 4724 | 48 | Bulloch | Harold Howell |
| 3280 | 1803 | Bulloch | Bill Bowen |
| 6728 | 48 | Bulloch | Depree Hendrix |
| 4750 | 1575 | Bulloch | Robbie Akins |
| 3985 | 1575 | Bulloch | Smith Farm |
| 3985 | 1575 | Bulloch | C.E. Howell |
| 3985 | 1209 | Bulloch | Arthur Brannen |
| 3985 | 1209 | Bulloch | Lester Brannen |
| 3985 | 1209 | Bulloch | Melba Brannen |
| 4724 | 1575 | Bulloch | Julian Hodges |
| 4750 | 44 | Bulloch | Julian Hodges |
| 4724 | 48 | Bulloch | Buford White |
| 4724 | 1523 | Bulloch | Sherhouse Farm |
| 3985 | 1716 | Bulloch | C.E. Howell |
| 4724 | 1716 | Bulloch | Harold Howell |
| 850 | 1575 | Bulloch | Bowman Deal |
| 4724 | 1575 | Bulloch | Wyatt Farm |
| 4724 | 1575 | Bulloch | Jones Farm |
| 571 | 1575 | Bulloch | Tinney Boyd |
| 792 | 1523 | Bulloch | Donald Joyner |
| 1132 | 1523 | Bulloch | Donald Joyner |
| 2847 | 1523 | Bulloch | Donald Joyner |