[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11164
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cv-01627-EAK-TBM


ANDREW PARHAM,

Plaintiff-Appellant,

versus

SEATTLE SERVICE BUREAU, INC.,
a foreign profit corporation
d.b.a. National Service Bureau,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 28, 2016)

Before HULL, WILLIAM PRYOR and ROSENBAUM, Circuit Judges.

PER CURIAM:

Plaintiff Andrew Parham appeals the district court's dismissal of his action against defendant Seattle Service Bureau, Inc. ("Seattle Service"), a debt collector, for claims alleged to arise under the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA").  The district court determined that Parham's complaint failed to state a claim under either the FDCPA or the FCCPA because the alleged debt Seattle Service sought to collect did not arise from a consensual "consumer" transaction but instead purportedly arose from the negligent conduct of Parham's sister in an automobile accident.  The district court concluded neither the FDCPA nor the FCCPA apply to the alleged tort debt that Seattle Service sought to collect.  After review of the record and briefs, we affirm.

## I.  BACKGROUND

On January 10, 2013, Leahana Parham, the plaintiff's sister, was involved in a minor automobile collision with another motorist, Sheila Garrison.[1]  Garrison's car was in front of Leahana's car.  Garrison began driving forward, but suddenly

---

[1]We recount the facts from the allegations in the complaint, which we accept as true and construe in the light most favorable to the plaintiff.  Cinotto v. Delta Air Lines Inc., 674 F.3d 1285, 1291 (11th Cir. 2012).

stopped.  Due to Garrison's sudden stop, Leahana's car "bumped" the rear end of Garrison's car.  The drivers exchanged insurance information.

Leahana's brother Andrew Parham owned the car Leahana had been driving. After the accident, Andrew reported the accident to his automobile insurance carrier, Progressive.  Progressive paid a claim of $298 for property damage to Garrison's vehicle.

In early November 2014, Andrew received a letter from Seattle Service addressed to him and Leahana.  The letter stated that Andrew and Leahana owed $50,000 to State Farm Insurance Company for damage to its insured's property, without identifying what property was damaged.  The record does not identify who State Farm's insured may have been.

About a week after Andrew received the letter, Seattle Service began calling his home.  Andrew's mother answered the first call, during which a Seattle Service representative warned that there was a judgment against Andrew and Leahana and that their licenses and his automobile registration would be suspended if they did not pay the claim.

When Andrew returned the call later that day, a Seattle Service representative told him that the $50,000 claim was for bodily injury caused by the January 10, 2013 accident.  That is the date of Leahana's accident with Garrison. The representative said that if Andrew did not pay the money, he would forfeit his

driver's license and his automobile tag.  That same day, Seattle Service called Leahana and gave her a similar warning.  On November 21, 2014, Andrew received a second warning call from Seattle Service.

Parham alleged Seattle Service and State Farm Insurance Company never provided him "an accounting" of the $50,000 that he and Leahana supposedly owed from the January 10, 2013 automobile accident.  The complaint alleges that: (1) neither Seattle Service, State Farm, nor Garrison ever filed a lawsuit against Andrew or Leahana and (2) no judgment has been recorded against them in the county of their residence.

## II.  PROCEDURAL HISTORY

On July 10, 2015, Andrew Parham filed a complaint against Seattle Service in federal district court.  Parham asserted federal causes of action arising under the FDCPA and state causes of action arising under the FCCPA and Florida's civil theft statute.  Seattle Service thereafter filed a "Motion to Dismiss and/or Motion for Judgment on the Pleadings."

In a February 2, 2016 order, the district court dismissed Parham's FDCPA and FCCPA claims without prejudice and declined to exercise supplemental jurisdiction over Parham's remaining Florida civil theft claim.[2]  As to the FDCPA and FCCPA claims, the district court construed the complaint to allege that Seattle

---

[2]The district court denied Seattle Service's motion for judgment on the pleadings.

Service "fabricated the existence of a debt that it claimed arose out of an automobile accident."  The district court concluded that the complaint failed to state a claim because any such debt, real or fabricated, did not arise out of a consensual consumer transaction covered by either the FDCPA or the FCCPA.

The district court gave Parham an opportunity to amend his complaint, but instructed that he needed to allege facts demonstrating that the alleged debt arose as a result of a "consumer transaction" or was otherwise converted into a consumer debt by some action of Seattle Service.

Parham did not file an amended complaint.  In a March 11, 2016 order, the district court dismissed the action.  This appeal followed.[3]

## III.  DISCUSSION

### A.    FDCPA Claim

The FDCPA, codified at 15 U.S.C. §§ 1692-1692p, was passed "to eliminate abusive debt collection practices by debt collectors" and provides consumers remedies when debt collectors engage in such practices.  15 U.S.C. §§ 1692(e), 1692k.

The FDCPA regulates "debt collector[s]" that attempt to collect the kind of debts covered by the statute.  See id. § 1692a(6).  The FDCPA specifically defines those debts as "any obligation or alleged obligation of a consumer to pay money

---

[3]We review de novo the district court's grant of a motion to dismiss for failure to state a claim.  Cinotto v. Delta Air Lines Inc., 674 F.3d 1285, 1291 (11th Cir. 2012).

arising out of a <u>transaction</u> in which the money, property, insurance, or services which are the subject of the transaction are primarily for <u>personal, family, or household purposes</u>." <u>Id.</u> § 1692a(5) (emphasis added). The statute thus regulates only the collection of debts arising from consumer transactions. <u>See</u> <u>Hawthorne v. Mac Adjustment, Inc.</u>, 140 F.3d 1367, 1371 (11th Cir. 1998).

The FDCPA specifies that the consumer debt sought to be collected need not actually exist for the debt collector to be bound by the FDCPA's requirements—indeed, the statute applies to "any obligation or alleged obligation." <u>Id.</u> However, even an "alleged obligation" must purportedly arise out of a "transaction" where "the subject of the transaction" is "primarily for personal, family, or household purposes." <u>Id.</u>

Parham argues that the debt Seattle Service sought to collect from him was a debt he did not owe and even a debt that did not exist. In its motion to dismiss, Seattle Service claimed that the debt was a "subrogation debt" arising from a tort committed (presumably by Leahana Parham) in the January 10, 2013 automobile accident. Parham contends that a claim by a debt collector against an individual for a "debt not owed" qualifies as a consumer debt under both the FDCPA and the FCCPA. Parham argues the district court erred in concluding otherwise and dismissing his FDCPA and FCCPA claims against Seattle Service.

Our decision in Hawthorne squarely controls the outcome in this case. Like Andrew Parham's sister, the plaintiff in Hawthorne was involved in an automobile accident, allegedly resulting from the plaintiff's negligence. 140 F.3d at 1369. Like Seattle Service, a company in Hawthorne subsequently attempted to collect a claim from the plaintiff, which the company alleged arose from the automobile accident and was due to the plaintiff's negligence. Id. And like Parham, the plaintiff in Hawthorne filed an action against the company seeking relief under the FDCPA. Id.

This Court determined that "the FDCPA may be triggered only when an obligation to pay arises out of a specified 'transaction'" within the meaning of the statute. Id. at 1371. We noted that the word "'transaction' necessarily implies some type of business dealing between parties" and referred to "consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence." Id. We explained that "the fact that [the company] may have entered into a contract with the insurer for subrogation rights does not change the fact that no contract, business, or consensual arrangement between Hawthorne and the damaged party, its insurer, or [the company] exists." Id. Since the claim the company sought to collect was not a "specified transaction," we held that the FDCPA did not apply. Id. (quotation marks omitted). As further support for our holding, we explained that the statute's

7

"language further limits application of the FDCPA to debts arising from <u>consumer</u> transactions" and noted that the debt at issue "[did] not arise out of a consumer transaction; it ar[ose] from a tort."[4] <u>Id.</u>

Here, it is undisputed that Seattle Service sought to collect an alleged debt from Andrew and Leahana Parham that purportedly arose as a result of Leahana's negligence in the January 10, 2013 automobile accident, presumably the same accident in which Leahana bumped Garrison's car. If anything, the alleged debt arose from a tort, not from a consensual, contractual, or consumer transaction within the meaning of the FDCPA. Thus, the district court properly dismissed Parham's FDCPA claims.

## B.    FCCPA Claim

Our analysis fully applies to Parham's FCCPA claims under Florida law as well. The definition of "debt" in the FCCPA is identical to the definition of "debt" in the FDCPA. <u>Compare</u> Fla. Stat. § 559.55(6), <u>with</u> 15 U.S.C. § 1692a(5). By its own terms, the FCCPA only regulates debt collectors attempting to collect consumer debts. <u>See</u> Fla. Stat. § 559.55(6). In addition, as to the application and construction of the FCCPA, the FCCPA itself provides that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act."

---

[4]We also observed that the Federal Trade Commission's "staff commentary on the FDCPA support[ed] our understanding of the statute." <u>Id.</u> at 1372 n.2.

8

Id. § 559.77(5). Thus, Hawthorne controls our interpretation of the FCCPA with equal force. Accordingly, the district court properly dismissed Parham's FCCPA claims as well.

## C.    Parham's Remaining Arguments

Parham argues that, regardless of the type, if a debt not owed by virtue of its nonexistence is deemed not to qualify as a consumer debt within the meaning of the FDCPA or the FCCPA, then all a debt collector needs to do to avoid the reach of these statutes is simply assert it is attempting to collect a debt arising out of a subrogation or other such non-covered consumer transaction. Such an interpretation of these statutes, Parham contends, would permit debt collectors to attempt to collect fictitious subrogation debts, thereby turning the FDCPA or the FCCPA into "'How To Manual[s]' for abusive and effective debt collection practices."

Without regard to these policy arguments, we must construe the FDCPA and the FCCPA as written. Either Congress or the Florida Legislature could have made these statutes apply to all debt collectors collecting every kind of debt. They did not, however, and they instead limited these statutes to consumer debts as described above. There may well be other statutory or common law remedies available to individuals targeted by debt collectors seeking to collect purely

9

fictitious subrogation debts.  But unfortunately neither the FDCPA nor the FCCPA provide those remedies.

For these reasons, the judgment of the district court is affirmed.

**AFFIRMED**.