**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RYAN FLEMING; JOY FLEMING,
husband and wife and the marital
community composed thereof;
MIKE SMITH; DEENNA SMITH
husband and wife; BRAD HASLAM;
TAMMIE HASLAM, husband and wife
and the marital community
composed thereof; JEREMY GOODIN,
a single man,
    *Plaintiffs-Appellants,*

    and

SCOTT HEATON; JENNIFER HEATON,
husband and wife and the marital
community composed thereof,
    *Plaintiffs,*

    v.

KENNETH PICKARD; JANE DOE
PICKARD, husband and wife and the
marital community composed
thereof; JAMES MARTYN, also knows
as James A. Martyn, also known as
Anthony J. Martyn, also known as
James A. Martynovich, also known
as James A. Maretyn-Ovych, also
known as Anthony J. Martynovich,
also known as Anthony J. Martyn-
Ovych; CATHERINE A. MARTYN
husband and wife and the marital
community composed thereof; M3
HOLDINGS LLC, a Washington State
Limited Liability Company,
    *Defendants-Appellees.*

No. 07-35979

D.C. No.
CV-07-00223-JCC

OPINION

12875

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Submitted May 7, 2009*
Seattle, Washington

Filed September 9, 2009

Before: Kim McLane Wardlaw, Richard A. Paez and
N. Randy Smith, Circuit Judges.

Opinion by Judge Paez

---

*The panel unanimously finds this case suitable for decision without
oral argument. See Fed. R. App. P. 34(a)(2).

## COUNSEL

James Sturdevant, Bellingham, Washinton, for the appellants.

Terence John Cullen and Susan Kathleen McIntosh, Forsberg & Umlauf, P.S., Seattle, Washington, for the appellees.

## OPINION

PAEZ, Circuit Judge:

We must decide whether a cause of action for tortious conversion constitutes a debt within the meaning of the Fair Debt Collection Practices Act ("FDCPA"). We hold that it does not. We therefore affirm the district court's judgment on the pleadings under Federal Rule of Civil Procedure 12(c) dismissing Plaintiffs' FDCPA claim without prejudice to their related state law claims.

I.

Between 2002 and 2005, Ryan and Joy Fleming, Brad and Tammie Haslam, Jeremy Goodin, Deenna Smith, and the estate of Michael Smith (collectively "Plaintiffs") purchased firearms, fishing gear, and general merchandise at a discount from Gary Barnes, an employee of Ace Hardware in Oak Harbor, Washington.[1] In 2005, Barnes was arrested for stealing items from Ace, including the goods that he sold to Plaintiffs. He was convicted of the offenses and imprisoned.

Ace sued Barnes that same year to recover the stolen merchandise or its value. Kenneth Pickard, a local attorney, represented Barnes in the lawsuit. Ace and Barnes reached a settlement, wherein Barnes's father, Robert, paid Ace $50,000.00 in exchange for an assignment of all Ace's claims against third parties. Robert in turn assigned his rights to Jim Martyn, who then assigned those rights to M3 Holdings, Inc. M3 Holdings and Martyn, represented by Pickard, filed a tort action against Plaintiffs in 2006 in Washington State Superior Court for wrongful conversion,[2] unjust enrichment, and violation of the Washington Criminal Profiteering Act. The complaint alleged that Plaintiffs had entered into illicit agreements with Barnes to acquire the stolen goods at discounted prices, and that they had not returned the goods to Ace.

In 2007, Plaintiffs filed suit in the United States District Court for the Western District of Washington, alleging that Pickard, M3 Holdings, and James Martyn and his wife, Catherine A. Martin, (collectively "Defendants") had violated the FDCPA and Washington statutes by filing the lawsuit against them and using other coercive methods, including displaying

---

[1]This factual summary is taken from Plaintiffs' allegations in their complaint and was not disputed by Defendants in their answer.

[2]Under Washington law, "[c]onversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *Lang v. Hougan*, 150 P.3d 622, 626 (Wash. Ct. App. 2007).

a pistol, to force Plaintiffs to pay for the stolen merchandise. Defendants' answer admitted the material allegations described above.

Defendants subsequently moved for dismissal under Rule 12(c), arguing that there was no consumer debt at issue to support a claim under the FDCPA, as actions constituting theft or conversion of goods do not create a "debt." The district court granted the motion, concluding that the Plaintiffs' obligation to pay had arisen in tort, not from a "debt" transaction as contemplated by the FDCPA. Having decided that there were no valid FDCPA claims, the district court dismissed the state law claims pursuant to 28 U.S.C. § 1367(c)(3). Plaintiffs timely appealed, seeking reversal of the district court's ruling on the grounds that the purchase of stolen goods constituted a transaction that created a debt under the FDCPA, or that, in the alternative, because there is a "conflict in the evidence," a jury should decide whether the obligation was a debt. We conclude that the district court properly granted Defendants judgment on the pleadings.[3]

## II.

We have jurisdiction over the district court's final judgment under 28 U.S.C. § 1291.

---

[3]We summarily reject one preliminary issue raised by Defendants. Defendants challenge the standing of Deenna Smith and the estate of her husband, Michael Smith. They argue that because Michael Smith signed a release agreement with M3 Holdings on October 2, 2006, discharging M3 Holdings from all liability related to the transactions with Ace, the Smiths lack standing to assert their FDCPA claims. Because none of the other Plaintiffs released their claims, their standing is not disputed. We therefore need not address the question of the Smiths' standing to reach the merits of the case. *See Brown v. City of Los Angeles*, 521 F.3d 1238, 1240 n.1 (9th Cir. 2008); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) ("[W]e consider only whether at least one named plaintiff satisfies the standing requirements . . . .").

We review de novo an order granting a Rule 12(c) motion for judgment on the pleadings. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir. 1999). We must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.[4] *Heliotrope*, 189 F.3d at 979.

We also review de novo the interpretation of a statute. *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1145 (9th Cir. 1998).

### III.

**[1]** The FDCPA provides a cause of action for consumers who have been exposed to "abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). As a threshold matter, a suit brought under the FDCPA must involve a "debt" within the meaning of the statute. *Turner*, 362 F.3d at 1227. The statute defines "debt" as

> any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). Thus, whether the undisputed facts alleged in the complaint establish the existence of debt within the meaning of § 1692a(5) is a question of law. This determi-

---

[4]We thus do not consider the Plaintiffs' declarations that were filed in support of their competing motion for summary judgment.

nation requires us to examine the alleged "transaction" and determine whether it is covered by the FDCPA.

**[2]** We have held that "at a minimum, a 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation." *Turner*, 362 F.3d at 1227. The FDCPA, therefore, does not apply where a defendant attempts to collect a state court judgment for damages as a result of tortious conduct. *Id.* at 1228. Other circuits have addressed criminal wrongdoing or tortious acts in the context of FDCPA claims, concluding that the obligation to pay for criminal or tortious actions does not constitute a "debt." *See, e.g.*, *Bass v. Stolper, Koritzinsky, Brewster & Nader, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997) ("[A]lthough a thief undoubtedly has an obligation to pay for the goods or services he steals, the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services."); *Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1168 (3d Cir. 1987) ("[N]othing in the statute or the legislative history leads us to believe that Congress intended to equate asserted tort liability with asserted consumer debt."); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) (holding that "debt" under the FDCPA is limited to liability arising out of consensual, consumer transactions, and not tortious activity).

Plaintiffs argue that they were in consensual and contractual relationships with Ace because Ace consented to employ Barnes, so that he could sell its merchandise, and to allow Plaintiffs to purchase the merchandise. Plaintiffs fail to recognize, however, that Ace did *not* consent to Barnes's stealing the merchandise, selling it at a discount, or pocketing the proceeds. Barnes's actions far exceeded the scope of Ace's consent, placing the resulting obligations well outside the scope of the debt obligation contemplated by the FDCPA.

Plaintiffs also cite two cases addressing FDCPA actions for attempting to collect the debt created by a dishonored check.

In *Charles v. Lundgren Assocs., P.C.*, 119 F.3d 739, 740 (9th Cir. 1997), we adopted the reasoning of the Seventh Circuit in *Bass*, and held that a dishonored check created a debt within the meaning of the FDCPA. In *Bass*, the Seventh Circuit held that "third-party efforts to collect payment from consumers who use a dishonored check for the purchase of goods or services" can be held liable under the FDCPA. 111 F.3d at 1323. Plaintiffs attempt to analogize these cases to their own, on the theory that writing a bad check is a crime, and therefore does not constitute a consensual transaction. The *Bass* court, however, specifically noted that not all dishonored checks evidence tortious or criminal activity. *Id.* at 1329. It further clarified that the obligation to pay for stolen goods does not create a debt governed by the FDCPA. *Id.* at 1326. In *Hawthorne*, the Eleventh Circuit agreed with this distinction, holding that "[u]nlike torts . . . bounced checks represent legal obligations to pay. In other words, they constitute evidence of a business dealing, or a 'transaction' under the FDCPA." *Hawthorne*, 140 F.3d at 1372. Both *Bass* and *Charles* involved consumers with honest intentions to pay the full price for legitimately acquired goods, and hence are inapposite to this case.[5]

**[3]** Having recognized that a consensual obligation must be the basis for a transaction covered by § 1692a(5), we have little difficulty concluding that Defendants' cause of action against Plaintiffs for wrongful conversion does not, as a matter of law, constitute a debt for purposes of the FDCPA.

AFFIRMED.

---

[5]For further discussion of the meaning of "debt" under the FDCPA, see Elwin Griffith, *The Fair Debt Collections Practices Act —Reconciling the Interests of Consumers and Debt Collectors*, 28 Hofstra L. Rev. 1, 17-20 (1999) (affirming the reasoning of courts that have declined to apply the FDCPA to obligations arising from tortious or non-consensual behavior); Elwin Griffith, *The Meaning of Language and the Element of Fairness in the Fair Debt Collection Practices Act*, 27 U. Tol. L. Rev. 13, 18-19 (1995) (affirming the reasoning of courts that have held that a "transaction" under the FDCPA applies only to consensual dealings).