NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 13 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

POWER OF FIVES, LLC, an Arizona
limited liability company,

No.    23-15152

Plaintiff-Appellant,

D.C. No. 2:22-cv-00722-JJT

v.

MEMORANDUM*

B&R ENTERPRISES, INC., a Tennessee
corporation; et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Submitted December 11, 2023**
San Francisco, California

Before:  GOULD, KOH, and DESAI, Circuit Judges.

The Power of Fives, LLC, appeals the district court's order granting

judgment on the pleadings in favor of B&R Enterprises, Inc., under Federal Rule

of Civil Procedure 12(c) and dismissing Appellant's complaint. The complaint

---

\*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*        The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

alleged that Appellee had intentionally interfered with Appellant's contractual relations. We have jurisdiction under 28 U.S.C. § 1291. Because an issue of material fact remains in dispute, the district court erroneously granted Appellee's motion for judgment on the pleadings. We therefore reverse and remand.

1. "We review de novo an order on a Rule 12(c) motion for judgment on the pleadings." *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th Cir. 2020) (citing *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). "We accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Id.* "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming*, 581 F.3d at 925.

Arizona law follows the test for intentional interference with contractual relations provided in the Restatement (Second) of Torts § 766. *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1043 (Ariz. 1985) ("We believe the Restatement approach most accurately reflects the tort of interference with contractual relations as it exists today."), *superseded by statute on other grounds as recognized in Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 164 P.3d 691, 693–94 (Ariz. Ct. App. 2007). Under this test, a plaintiff must prove: "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing a

breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 31 (Ariz. 2002) (citing Restatement (Second) of Torts § 766 (Am. L. Inst. 1977)). In determining whether the defendant acted improperly, Arizona courts consider seven factors:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

Restatement (Second) of Torts § 767; *see Wells Fargo Bank*, 38 P.3d at 32 (same). Of these seven factors, "[w]e give the greatest weight to the first two factors, the nature of the defendant's conduct and the defendant's motive." *Safeway Ins. Co., Inc. v. Guerrero*, 106 P.3d 1020, 1027 (Ariz. 2005).

Under § 773 of the Restatement's good faith defense, an alleged interferer is not considered to have interfered improperly with another's contractual relations so long as the interferer: "(1) has or honestly believes he has a legally protected interest, (2) which he in good faith asserts or threatens to protect, and (3) he threatens to protect it by proper means." *Snow v. W. Sav. & Loan Ass'n*, 730 P.2d 204, 212–13 (Ariz. 1986). "If any of these elements is lacking," the defense does not apply. Restatement (Second) of Torts § 773 cmt. a. "A determination of good

3

faith involves an inquiry into the party's motive and purpose as well as actual intent." *Snow*, 730 P.2d at 213. The analysis for improper motive and means under § 773 (good faith defense) is the same under § 767 (factors for determining the propriety of an interference). *See, e.g.*, Restatement (Second) of Torts div. 9, ch. 37 intro. note ("[T]here is no clearcut distinction between the requirements of a prima facie case and the requirements for a recognized privilege. Initial liability depends upon the interplay of several factors . . . and privileges, too, . . . depend upon a consideration of much the same factors.'); *see also id.* (noting that § 773 "state[s] specific applications of the factors set out in § 767").

Moreover, when analyzing motive and means, the Arizona Supreme Court has stated that "[i]f the interferer is to be held liable for committing a wrong, his liability must be based on more than the act of interference alone. Thus, there is ordinarily no liability absent a showing that defendant's actions were improper as to motive or means." *Safeway Ins. Co., Inc*, 106 P.3d at 1020 (*quoting Wagenseller*, 710 P.2d at 1043); *see also Wagenseller*, 710 P.2d at 1043 ("We find nothing inherently wrongful in 'interference' itself."). Thus, conduct separate from the interference should be considered. This is further supported by Restatement (Second) of Torts § 767's last impropriety factor, which looks to "the proximity or remoteness of the actor's conduct to the interference."

2. Because the parties are familiar with the facts of the case, we need not

repeat them here. The parties agree with the district court that the interference at issue is Appellee's failure to perform at a concert (the "Event") hosted by Appellant, a breach of Appellee's Performance Agreement. The district court asserted that because the interference is just a contractual breach "for which there are contractual remedies," the interference is not tortious. It is of no moment, however, that the interference is a breach of contract, because "[t]he duty not to interfere with the contract of another arises out of law, not contract." *Bar J Bar Cattle Co. Inc. v. Pace*, 763 P.2d 545, 550 (Ariz. Ct. App. 1988); *see* Restatement (Second) of Torts § 766 cmt. v ("The fact that the plaintiff has an available action for breach of contract against the third person does not prevent him from maintaining an action [of intentional interference with contractual relations] against the person who has induced or otherwise caused the breach.").

The district court failed entirely to analyze the propriety of Appellee's means, an error which warrants reversal. The district court also erred in concluding that there was no material factual dispute as to Appellee's motive. Although the district court acknowledged that an interferer's motive is normally a question of fact, it nevertheless decided, as a matter of law, that Appellee's motive was proper. It is unclear what factual allegations the district court considered to reach this conclusion. Although the background section of the district court's order set forth Appellant's allegations regarding all of John Rich's tweets and his phone call to

Adam Lewis, the order's discussion section did not discuss any specific factual allegations regarding Appellee's motive.

The only discussion of specific allegations in the discussion section of the district court's order is in its analysis of whether Appellee interfered with the Appellant's Production Agreement. In that analysis, the district court considered only John Rich's tweet stating, "Our November 6th show in Phoenix has been cancelled," and John Rich's phone call attempting to dissuade Adam Lewis from performing at the Event. The district court discounted the phone call to Adam Lewis because Lewis ultimately performed. However, even if John Rich's call to dissuade Lewis from performing was unsuccessful, the call may still constitute evidence of Appellee's improper motive.

Similarly, all of John Rich's Tweets may have created the impression that Appellee sought to undermine the Event because of Appellant's enforcement of the venue's COVID restrictions. John Rich's Tweets, claiming that the Event had been "[c]ancelled" and that Rich had "shut down" the event served primarily to give attendees the incorrect impression that the Event had been cancelled, which allegedly caused ticket sales to plummet; ticket holders to seek refunds en masse, which Appellant had to honor; Appellant at the last minute to spend thousands of dollars issuing refunds, rebranding the Event, booking new acts to perform, and reconfiguring advertising and merchandise; and harm to Appellant's reputation as

6

an effective political advocate and organizer.

At a minimum, such conduct raises a material factual dispute as to whether Appellee harbored ill will towards Appellant and sought to undermine the Event because of its COVID policy. The district court therefore erred by concluding that Appellee was entitled to the good faith defense as a matter of law. *See Neonatology Assocs., Ltd.,* 164 P.3d at 694 ("[T]he issue of motive or the propriety of an action is one of fact and not law," and can be resolved as a matter of law "when there is no reasonable inference to the contrary in the record").

Because the grant of Appellee's Rule 12(c) motion for judgment on the pleadings was erroneous, we reverse the district court's dismissal and remand the case for further proceedings consistent with this disposition.

**REVERSED and REMANDED.**